1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DERRICK LANG HUNTER,

                              Petitioner,

           v.

MAGGIE MILLER-STOUT,

                              Respondent.

No. C12-5517 RBL/KLS

**REPORT AND RECOMMENDATION**
**Noted for:  May 10, 2013**

*Pro se* petitioner Derrick Lang Hunter, proceeding *in forma pauperis,* petitions for 28

U.S.C. § 2254 relief from his 2009 jury-trial convictions for six counts of Identity Theft in the

Second Degree.  ECF No. 1.  Mr. Hunter included seven claims for relief in his habeas petition.

*Id.*, pp. 5-16.   In a previous Report and Recommendation, the undersigned found that Mr.

Hunter has not exhausted his state court remedies for Claims 5, 6, and 7 and recommended that

Mr. Hunter's petition be dismissed without prejudice unless Mr. Hunter elected to delete the

unexhausted claims and proceed only with Claims 1, 2, 3, and 4.  In his objections to the Report

and Recommendation, Mr. Hunter elected to forego his unexhausted claims.  ECF No. 27.  The

District Judge dismissed Claims 5, 6, and 7 without prejudice and re-referred the remaining

claims to the undersigned for a determination on the merits.

Having carefully considered the parties' filings and relevant record, the undersigned

recommends that Claims 1, 2, 3, and 4 should be denied on the merits and dismissed with

prejudice.  The Court also recommends denying a certificate of appealability.

REPORT AND RECOMMENDATION - 1

## BACKGROUND

Mr. Hunter is confined pursuant to a judgment and sentence of the Pierce County Superior Court.  He was found guilty on April 21, 2009, by jury verdict of six counts of Identity Theft in the Second Degree.  ECF No. 12, Exhibit 1.  On January 29, 2010, the trial court imposed a sentence of 57 months confinement on each count, to run concurrently.  *Id.*, at 6.  The 57-month sentence was imposed consecutively to his sentences in Pierce County Cause Nos. 07-1-00612-7 (120 months) and 07-1-01793-5 (22 months).  *Id.,* Exhibit 1(a) and Exhibit 1(b).

## FACTS AND PROCEDURAL HISTORY

The Washington Court of Appeals summarized the facts of Mr. Hunter's crimes as follows:

> In March 2007, officers found numerous financial and identification documents at Hunter's house in his backpack and briefcase while executing a search warrant for communicating with a minor for immoral purposes, attempted kidnapping with sexual motivation, luring, and failing to register as a sex offender.[1]  Officers found seven credit cards, four social security cards, two drivers' licenses, three checks, a checkbook, three photo identification cards, and one certificate of live birth belonging to persons other than Hunter.  Officers found handwritten lists that included the names, credit card numbers and expiration dates, dates of birth, and/or social security numbers of multiple individuals.  The lists admitted as exhibits 22, 24, 27 were written on the backs of papers that had Hunter's name and/or other information on the front side.  They also found applications for driver's licenses and identification cards, and applications or letters regarding applications for credit cards for several people.  Officers also found mail addressed to others, as well as a credit report and credit card statements.
>
> The State charged Hunter by amended information with 14 counts of second degree identity theft.[2]  At trial, the trial court admitted 79 of the State's exhibits, all taken during execution of the search warrant.  In addition, two victims testified that they did not give Hunter their identification or financial information and had no idea how he came to possess the documents.  Social Security Administration Special Agent Joseph Rogers testified that he had compared a list of 24 names, dates of birth, and/or social security numbers given to him by the State.  Many of the social security numbers and dates of birth matched real people, including many of the victims of the charged crimes.  Hunter

REPORT AND RECOMMENDATION - 2

objected to Rogers's testimony about exhibit 10, a social security card in Hunter's name, because Rogers did not bring the database records, only his own notes. Hunter did not object to the remaining testimony until after the State completed direct examination.  The trial court overruled both objections.

Keith Brown, one of Hunter's roommates at the time police executed the search warrant, testified that the backpack, briefcase, and bedroom police searched belonged to Hunter.  Brown denied that any of the exhibits found during the search warrant belonged to him.

The jury found Hunter guilty of six counts of second degree identity theft. At sentencing, Hunter moved for arrest of judgment, arguing that under *Flores-Figueroa v. United States,* 566 U.S. 646, 129 S. Ct. 1886, 173 L. Ed. 2d 853 (2009), the State had to prove that he knew the financial or identification information belonged to a real person.  The trial court denied Hunter's motion, finding that the Supreme Court's analysis was limited to the federal statute discussed in *Flores-Figueroa.*  Hunter appeals.

> [1] Hunter was tried for the crimes giving rise to the search warrant in a separate trial. [Footnote by the court.]

> [2] The State originally charged Hunter with one count first degree identity theft and 13 counts second degree identity theft, but amended the information toward the end of its case.  The State also moved to dismiss count IX for insufficient evidence, and the trial court granted the motion. [Footnote by the court.]

ECF No. 12, Exhibit 5, at 2-3.

Counsel for Mr. Hunter filed an appellant's brief in the Washington Court of Appeals.

ECF No. 12, Exhibit 2, at 2-3.  Respondent State of Washington filed a brief in response.  *Id.,*

Exhibit 3.  Through counsel, Mr. Hunter filed a reply brief.  *Id.*, Exhibit 4.  The Washington

Court of Appeals issued an unpublished opinion affirming Mr. Hunter's judgment and sentence.

*Id.*, Exhibit 5.

Through counsel, Mr. Hunter filed a petition for review in the Washington Supreme

Court.  ECF No. 12, Exhibit 6.  The Chief Justice of the Washington Supreme Court issued an

REPORT AND RECOMMENDATION - 3

order denying Mr. Hunter's petition for review. *Id.,* Exhibit 7. The Washington Court of Appeals issued a mandate on April 5, 2012. *Id.*, Exhibit 8.

## FEDERAL HABEAS ISSUES

Mr. Hunter's four claims for habeas relief are summarized as follows:

1.   The court of appeals erred in ignoring the ruling in *Flores-Figueroa v. U.S.,* 556 U.S. 646, 129 S.Ct. 1886, 1888, 1894, 173 L.Ed.2d 853 (2009), relieving the state of its burden of proving that Petitioner knew that the identity theft information allegedly possessed was that of a real person.

2.   State's evidence on possession of identity theft information was insufficient to establish possession and that Petitioner possessed the identification of another person.

3.   Petitioner was denied effective assistance of counsel when attorney failed to challenge legitimacy of search warrant, in violation of Sixth Amendment right to counsel.

4.   Petitioner's search warrant was invalid because the search warrant affidavit failed to establish probable cause to search petitioner's car or residence, in violation of Petitioner's right to be free of unreasonable searches and seizures under the Fourth Amendment of the U.S. Constitution.

ECF No. 1, at Grounds 1-4, pp. 5-10.

## EVIDENTIARY HEARING

The decision to hold a hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 127 S. Ct. 1933, 1939-41 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 127 S. Ct. at 1940. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, ---U.S.---, 131 S. Ct. 1388 (2011). A hearing is not required if the allegations would not entitle petitioner to relief

REPORT AND RECOMMENDATION - 4

under 28 U.S.C. § 2254(d).  *Landrigan*, 127 S.Ct. at 1940.  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  *Id.; see also Cullen*, 131 S. Ct. 1388 (2011).

The Court finds it unnecessary to hold an evidentiary hearing because Mr. Hunter's claims may be resolved on the existing state court record.

<strong>STANDARD OF REVIEW</strong>

The standard of review applicable to Mr. Hunter's claims is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Under the AEDPA, the "clearly established Federal law" that controls federal habeas review of state court decisions consists of holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Greene v. Fisher*, 565 U.S. ——, 132 S.Ct. 38, 44, 181 L.Ed.2d 336 (2011); *Carey v. Musladin*, 549 U.S. 70, 74, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006).

Although a particular state court decision may be "contrary to" and "an unreasonable application of" controlling Supreme Court law, the two phrases have distinct meanings. *Williams*, 529 U.S. at 391, 413.  A state court decision is "contrary to" clearly established federal law if the decision either applies a rule that contradicts the governing Supreme Court law, or

reaches a result that differs from the result the Supreme Court reached on "materially

indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141, 125 S.Ct. 1432, 161 L.Ed.2d 334

(2005); *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam);

*Williams*, 529 U.S. at 405–06.  When a state court decision adjudicating a claim is contrary to

controlling Supreme Court law, the reviewing federal habeas court is "unconstrained by §

2254(d)(1)."  *Williams*, 529 U.S. at 406.  However, the state court need not cite or even be aware

of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the

state-court decision contradicts them."  *Packer,* 537 U.S. at 8.

State court decisions that are not "contrary to" Supreme Court law may only be set aside

on federal habeas review "if they are not merely erroneous, but 'an unreasonable application' of

clearly established federal law, or are based on 'an unreasonable determination of the facts.'"

*Packer*, 537 U.S. at 11 (citing 28 U.S.C. § 2254(d) and adding emphasis).  A state court decision

that correctly identified the governing legal rule may be rejected if it unreasonably applied the

rule to the facts of a particular case. *See Williams*, 529 U.S. at 406–10, 413 (e.g., the rejected

decision may state *Strickland* rule correctly but apply it unreasonably); *Woodford v. Visciotti*,

537 U.S. 19, 24–27, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).  However, to obtain

federal habeas relief for such an "unreasonable application," a petitioner must show that the state

court's application of Supreme Court law was "objectively unreasonable."  *Visciotti*, 537 U.S. at

24–27; *Williams*, 529 U.S. at 413.  An "unreasonable application" is different from an erroneous

or incorrect one.  *See Williams*, 529 U.S. at 409–10; *see also Visciotti*, 537 U.S. at 25; *Bell v.

Cone*, 535 U.S. 685, 699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).  Moreover, review of state

court decisions under § 2254(d)(1) "is limited to the record that was before the state court that

REPORT AND RECOMMENDATION - 6

adjudicated the claim on the merits."  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011),

## DISCUSSION

**A.      Claim 1 – Insufficient Proof of Petitioner's Knowledge**

In this claim, Mr. Hunter alleges that the trial court's instruction to the jury relieved the State of its burden requiring proof that Mr. Hunter knew the information was that of a real person.  ECF No. 1, p. 5; ECF No. 12, Exhibit 6, at 4-6.   Mr. Hunter argues that the Washington Court of Appeals ignored United States Supreme Court precedent in *U.S. v. Flores-Figueroa,* 56 U.S. 646, 129 S.Ct. 1886, 1888, 1894, 173 L.Ed.2d 853 (2009).

Mr. Hunter relies on *Flores-Figueroa* for the proposition that the State must prove that the accused knowingly obtains or uses the identification or financial information of a real person, and that the jury instruction given in his case relieved the State of that burden.  ECF No. 1, p. 5; ECF No. 12, Exhibit 6, pp. 4-5.  The relevant jury instruction is Instruction 7 (and, by extension, Instructions 11-16, the "to-convict" instructions for each of the six counts of second degree identify theft).  Instruction 7 stated the following:

> A person commits the crime of identity theft in the second degree when, with intent to commit or aid or abet any crime, he or she knowingly obtains, possesses, uses, or transfers a means of identification or financial information of another person, living or dead, and obtains credit, money, goods, services, or anything else, that is $1,500 or less in value or does not obtain anything of value.

ECF No. 12, Exhibit 13 (Court's Instructions to the Jury at Instruction No. 7).

When it rejected Mr. Hunter's claim, the Washington Court of Appeals did not ignore *Flores-Figueroa.*  Instead, it discussed the holding of *Flores-Figueroa* in detail and distinguished it from Mr. Hunter's case:

REPORT AND RECOMMENDATION - 7

Hunter argues that the trial court erred by denying his CrR 7.4 motion for arrest of judgment.  Hunter contends that under *Flores-Figueroa*, the State must prove that he knew the documents he possessed belonged to a real person.  Because *Flores-Figueroa* does not control our interpretation of Washington law, and because *Flores-Figueroa* is inconsistent with Washington rules of statutory interpretation, we disagree.

At issue in *Flores-Figueroa* was 18 U.S.C. § 1028A(a)(1), which punishes "aggravated identity theft."  A mandatory consecutive two-year prison term is to be imposed on individuals convicted of certain crimes if during and in relation to the commission of those crimes, the offender "knowingly transfers, possesses, or uses without lawful authority, a means of identification of another person."  18 U.S.C. § 1028A(a)(1).  The Court found that "[a]s a matter of ordinary English grammar, it seems natural to read the statute's word 'knowingly' as applying to all the subsequently listed elements of the crime."  *Flores-Figueroa*, 129 S. Ct. at 1890.  The Court reasoned that "[i]n ordinary English, where a transitive verb[5] has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence."  *Flores-Figueroa*, 129 S. Ct. at 1890.  This rule, however, is limited to the interpretation of federal criminal statutes, and does not control our interpretation of a Washington State statute.  *See Flores-Figueroa*, 129 S. Ct. at 1895 (Alito, J., concurring) ("I suspect that the Court's opinion will be cited for the proposition that the *mens rea* of a federal criminal statute nearly always applies to every element of the offense.").  In addition, the *Flores-Figueroa* majority noted that its construction of how the word "knowingly" modifies the subsequently listed elements was not binding in all situations.  *Flores-Figueroa*, 129 S. Ct. at 1891 ("As Justice Alito notes, the inquiry into a sentence's meaning is a contextual one.").  *Flores-Figueroa* does not bind our interpretation of a Washington statute.  *See also Von Herberg v. City of Seattle*, 157 Wash. 141, 160, 288 P. 646 (1930) ("[O]ur interpretation of our statutes is binding upon the Federal courts, not theirs on us.").

Furthermore, *Flores-Figueroa's* statutory interpretation approach is inconsistent with Washington law.  The word "knowingly" is an adverb, and, as a grammatical matter, an adverb generally modifies the verb or verb phrase with which it is associated.  *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001).  Washington's identity theft statute states that, "[n]o person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime."  Former RCW 9.35.020(1) (2004).[6]  Under this state's statutory interpretation rules, "knowingly" modifies the verb phrase—"obtain, possess, use, or transfer."  Our courts have construed "another person" to require proof that the identification or financial information belonged to a "real person."  *State v. Berry*, 129 Wn. App. 59, 67, 117 P.3d 1162 (2005), *review denied*, 158 Wn.2d 1006 (2006).  But "knowingly" does not modify the phrase "of another person."  The

REPORT AND RECOMMENDATION - 8

phrase "of another person" is an object and is not modified by the adverb knowingly.  *See Flores-Figueroa*, 129 S. Ct. at 1894 (Scalia, J., concurring) ("of another person" is an object).  The State had to show that Hunter knowingly obtained, used, or transferred a real person's means of identification or financial information, but the State did not need to prove that he knew that information belonged to a real person.

Hunter failed to show that there was insufficient proof of a material element of the crime charged.  The trial court did not err in denying his motion for arrest of judgment.

> [5] "A transitive verb requires an object to express a complete thought; the verb indicates what action the subject exerts on the object."  THE CHICAGO MANUAL OF STYLE, § 5.96, at 229 (16th ed. 2010). [Footnote by the court.]

> [6]The legislature amended RCW 9.35.020 to specify when a person who violates RCW 9.35.020(1) is guilty of first or second degree identity theft, and to clarify the unit of punishment. LAWS OF 2008, ch. 207, § 4. None of these changes are relevant to the issues of this appeal. [Footnote by the court.]

ECF No. 12, Exhibit 5, pp. 8-11.

A claim that a jury instruction was incorrect under state law is not a basis for habeas relief.  *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  *See also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law[.]")  Instead, the Court's "review is limited to determining whether an allegedly defective jury instruction 'so infected the entire trial that the resulting conviction violates due process.'"  *Carriger v. Lewis*, 971 F.2d 329, 334 (9th Cir.1992) (*quoting Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal."  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  With the failure to give an instruction, the petitioner's burden is "especially heavy" because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a

REPORT AND RECOMMENDATION - 9

1    misstatement of the law." *Id.* at 155; *accord Villafuerte v. Stewart*, 111 F .3d 616, 624 (9th

2    Cir.1997).

3         Mr. Hunter's reliance on *Flores-Figueroa* does not assist him here.  As correctly noted by

4    the Washington Court of Appeals, the holding of *Flores-Figueroa* applies to the interpretation of

5    a *federal* statute, not the Washington statute at issue in Mr. Hunter's case.   The Washington

6    Court of Appeals analyzed Mr. Hunter's claim under Washington's identity theft statute (former

7    RCW 9.35.020(1) (2004), in concluding that while the State had to show that Mr. Hunter

8    knowingly obtained, used, or transferred a real person's means of identification or financial

9    information, the State did not need to prove that he knew that information belonged to a real

10   person.

11        Mr. Hunter fails to show that the Washington Court of Appeals' decision as to Claim 1

12   was contrary to or an objectively unreasonable application of clearly established law, as

13   determined by the U.S. Supreme Court, or that it was an objectively unreasonable determination

14   of the facts in light of the evidence presented during his state court proceeding.  Therefore, Claim

15   1 should be denied.

16

17

18   **B.    Claim 2 – Insufficient Evidence of Possession of Identity Theft Information**

19        In Claim 2, Mr. Hunter contends that the Washington State Court's decision was an

20   unreasonable determination of the facts in light of the evidence.  In his petition for review, Mr.

21   Hunter argued that the State's evidence on possession of identity theft information was

22   insufficient to establish that Mr. Hunter possessed the identification of another person.  ECF No.

23   1, p. 6; ECF No. 12, Exhibit 6, at 15-19.

24        The Washington Court of Appeals rejected this claim:

25

26

REPORT AND RECOMMENDATION - 10

1

2       Additionally, Hunter asserts that insufficient evidence supported a finding
that he possessed the identification or financial documents of another. Hunter
3   argues that the State had to show how he came to possess the documents or how
they were transferred to him. Hunter also argues that there was no evidence
connecting him to the vehicle that police searched. We disagree.

4

5       Sufficient evidence supports the jury's verdict if the jury has a factual
basis for finding each element of the offense proven beyond a reasonable doubt.
6   *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). An appellant
claiming insufficiency of the evidence admits the truth of the State's evidence and
7   all inferences that reasonably can be drawn therefrom. *Salinas*, 119 Wn.2d at
201. We view both circumstantial and direct evidence as equally reliable, and
8   defer to the trier of fact on issues of conflicting testimony, witness credibility, and
the persuasiveness of the evidence. *Thomas*, 150 Wn.2d at 874-75.

9

10      Constructive possession means that the evidence is not in the defendant's
actual, physical possession, but that the person charged with possession has
11  dominion and control over the goods. *State v. Staley*, 123 Wn.2d 794, 798, 872
P.2d 502 (1994). The State may prove constructive possession by circumstantial
12  evidence. *State v. Sanders*, 7 Wn. App. 891, 893, 503 P.2d 467 (1972). We
examine the totality of the situation to determine if a defendant had dominion and
13  control over an item. *Partin*, 88 Wn.2d at 906. Factors to consider when
determining dominion and control include whether the defendant could reduce an
14  object to actual possession and whether he had the ability to exclude others. *State
v. McReynolds*, 117 Wn. App. 309, 341, 71 P.3d 663 (2003); *State v. Edwards*, 9
15  Wn. App. 688, 690, 514 P.2d 192 (1973). But exclusive control is not necessary
to prove dominion and control. *State v. Davis*, 117 Wn. App. 702, 708-09, 72
16  P.3d 1134 (2003), *review denied*, 151 Wn.2d 1007 (2004).

17

18      Detective Darin Sale testified that he recovered all the documents from a
briefcase and backpack found either in a bedroom within the residence or a
19  vehicle. Detective Sale testified that all exhibits admitted were found in the
course of executing the search warrant. Brown testified that the backpack and
20  briefcase belonged to Hunter, and that police searched Hunter's bedroom. This is
enough to show that Brown exerted dominion and control over the backpack,
21  briefcase, and bedroom. In addition, Brown testified that Hunter had moved into
the home, and did not indicate that Brown's move was only temporary. This
22  further supported a finding that Hunter exerted dominion and control over the
bedroom. Although Hunter's possession of the vehicle is less clear, the evidence
23  shows that Hunter owned and thus had dominion and control over the carrying
case found within the vehicle.[12] Sufficient evidence supports Hunter's
24  convictions.

25

26

REPORT AND RECOMMENDATION - 11

[¹²When asked whether police searched Hunter's backpack, Brown
stated, "They searched everything. They searched the trunk of the
car and everything." 3 VRP at 230 (emphasis added).]

ECF No. 12, Exhibit 5, pp. 16-18.

Under *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979),

evidence is sufficient to support a conviction if, "after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt."  Although federal courts look to state law for the

substantive elements of the criminal offense, the minimum amount of evidence that the Due

Process Clause requires to prove the offense is purely a matter of federal law.  *See Coleman v.*

*Johnson*, --- U.S. ---, 132 S.Ct. 2060, 2064, 182 L.Ed.2d 978 (2012) (per curiam); *Jackson*, 443

U.S. at 324 n. 16.  It is exceedingly difficult for a petitioner to demonstrate insufficiency of the

evidence on federal habeas review:

> Jackson claims face a high bar in federal habeas proceedings because they are
> subject to two layers of judicial deference.  First, on direct appeal, "it is the
> responsibility of the jury—not the court—to decide what conclusions should be
> drawn from evidence admitted at trial.  A reviewing court may set aside the jury's
> verdict on the ground of insufficient evidence only if no rational trier of fact could
> have agreed with the jury."  *Cavazos v. Smith*, 565 U.S. 1, ---, 132 S.Ct. 2, 4, 181
> L.Ed.2d 311, --- (2011) (per curiam).  And second, on habeas review, "a federal
> court may not overturn a state court decision rejecting a sufficiency of the
> evidence challenge simply because the federal court disagrees with the state court.
> The federal court instead may do so only if the state court decision was
> 'objectively unreasonable.'"  Ibid. (quoting *Renico v. Lett*, 559 U.S., ---, ---, 130
> S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010).

*Coleman*, 132 S.Ct. at 2062.

Mr. Hunter argues that the State failed to provide sufficient evidence that he possessed

the identity documents because there was no evidence that the vehicle belonged to him and it

was not clear which briefcase (either the one found in the vehicle or the one found in the

REPORT AND RECOMMENDATION - 12

1    bedroom) belonged to him.  He argues that the state failed to prove that he had the ability to take

2    actual possession of or to exclude others from possession of the items in the vehicle or that he

3    had dominion and control over the vehicle.  ECF No. 25, p. 23.

4          The undersigned concludes that it was objectively reasonable for the Washington Court

5    of Appeals to find that there was sufficient evidence adduced at trial.  A rational jury could

6    conclude from the evidence that Mr. Hunter exerted dominion and control over the bedroom, the

7    backpack, and briefcase.  A rational jury could have accepted the State's evidence, presented

8    through Detective Darin Sale, which showed that all the documents at issue were found within a

9    briefcase and backpack, which in turn, were found in a bedroom or a vehicle.  The evidence

10   shows that the bedroom belonged to Mr. Hunter and although his possession of the vehicle was

11   less clear, the evidence showed that Mr. Hunter "owned and thus had dominion and control over

12   the carrying case found within the vehicle."  There is no authority for Mr. Hunter's contention

13   that the State was required to prove actual control or an ability to exclude the possession of

14   others from the bedroom or vehicle.

15         Mr. Hunter fails to show that the Washington Court of Appeals' decision as to Claim 2

16   was contrary to or an objectively unreasonable application of clearly established law, as

17   determined by the U.S. Supreme Court, or that it was an objectively unreasonable determination

18   of the facts in light of the evidence presented during his state court proceeding.  Therefore, Claim

19   2 should be denied.

**C.    Claim 3 – Ineffective Assistance of Counsel**

          In Claim 3, Mr. Hunter argues that his attorney provided ineffective assistance because

     he failed to challenge the legitimacy of the search warrant.  ECF No. 1 at Ground 3; ECF No. 12,

     Exhibit 6, at 8-10.  As is discussed more thoroughly below, Mr. Hunter's claim regarding the

REPORT AND RECOMMENDATION - 13

legitimacy of the search warrant (Claim 4) is barred by *Stone v. Powell,* 487 U.S. 465 (1976). However, the ineffective handling of a Fourth Amendment claim, as a basis for a Sixth Amendment ineffective assistance of counsel claim, is not barred.  *Kimmelman v. Morrison,* 477 U.S. 365, 382-83 (1986).

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

With respect to *Strickland's* first prong, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Judicial scrutiny of counsel's performance must be highly deferential.  *Id*. at 689.  There is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance.  *Id*.  In order to prevail on an ineffective assistance of counsel claim, a petitioner must overcome the presumption that counsel's challenged actions might be considered sound trial strategy. *Id*.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  The primary question when reviewing a claim of ineffective assistance of counsel under AEDPA is not whether counsel's representation was deficient, or whether the state court erred in analyzing the claim, but whether the state court adjudication was unreasonable.  *Schriro v. Landrigan,* 550 U.S. 465, 127 S.Ct. 1933, 1939 (2007).  The Court owes a great level of deference to the state court adjudication. *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003).

REPORT AND RECOMMENDATION - 14

*Strickland's* second prong requires a showing of actual prejudice related to counsel's performance.  In order to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  It is not enough that counsel's errors had "some conceivable effect on the outcome."  Rather, the petitioner must show "that, but for counsel's unprofessional errors, the result would have been different." *Id*. at 693-94.  "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)(quoting *Harrington v. Richter*, 131 S.Ct. 770, 791 (2011)).

The reviewing Court need not address both components of the inquiry if an insufficient showing is made on one component.  *Strickland*, 466 U.S. at 697.  Furthermore, if both components are to be considered, there is no prescribed order in which to address them.  *Id*.

Mr. Hunter's defense counsel conceded that the validity of the February 27, 2007 search warrant had been previously ruled upon and that *res judicata* controlled the issue.  *See* Exhibit 14, Volume 1 of 3, at 4-5.  In Pierce County Superior Court case No. 07-1-00612-7 (sex offense charges), Mr. Hunter filed a motion to suppress evidence seized pursuant to a search warrant that was signed by the trial court on February 27, 2007.  ECF No. 12, Exhibit 9.  The trial court denied the motion to suppress.  *Id.*, Exhibit 10.  In Pierce County Superior Court Cause No. 07-1-01406-5, which is the case for the state court judgment challenged herein, Mr. Hunter's defense counsel also filed a motion to suppress, based on the evidence obtained pursuant to the same February 27, 2007 search warrant referenced above.  *Id.*, Exhibit 11.

The State in its trial brief stated:

REPORT AND RECOMMENDATION - 15

**This is an Identity Theft case that flows from an investigation of charges associated with Cause Number 07-1-00612-7.**  In that case the Defendant was initially charged with the crimes of Attempted Kidnapping in the First Degree with Sexual Motivation, Failing to Register as a Sex Offender.  Additional charges of Luring and Communication with a Minor for Immoral Purposes were added.  During the course of investigating those crimes, Lakewood Police Detective Miller obtained a search warrant for the defendant's vehicle and residence.  Upon executing that search warrant, law enforcement discovered opened mail in several names, documents, including social security cards, and notes relating to the personal financial information of multiple individuals.  The Defense unsuccessfully challenged the validity of the search warrant in Cause No. 07-1-00612-7. **The parties agree that that ruling disposes of any CrR 3.6 issues in this case.**

ECF No. 12, Exhibit 12 (State's Trial Brief, *State v. Hunter,* Pierce County Superior Court Cause No. 07-1-01406-5, at 1 (emphasis added)).  At a hearing in Case No. 07-1-01406-5, Mr. Hunter's defense counsel made the following statement regarding his motion to suppress:

> Also have a 3.6 motion that I am filing but conceding because the issue was decided by Judge Steiner. What had happened is that the police in that case, Lakewood Police, executed a search warrant for evidence pertaining to the Judge Steiner's case involving failed to register and attempted kidnapping and whatnot. When they executed the warrant, they didn't really find a whole lot of things that they could use for Judge Steiner's case, but they found all the evidence that pointed and added up to the counts in this case.  So I made a motion in front of Judge Steiner to suppress whatever evidence they did have in that case that they may or may not have wanted to use under 3.6.

> And I am going to file with the court the original and give one to the court as a bench copy, I gave one to Ms. Fitzer, that files the motion.  Attached to it is Judge Steiner's Findings and Conclusions on this search warrant, and I did the research on this, and law of res judicata would apply because it was the same warrant, the same parties, the same transaction, the same issues.

> So my understanding is, although I respectfully disagree with Judge Steiner's ruling, that it is binding on -- under principles of res judicata, would be binding on your Honor, so I am filing it to preserve the issue in this case even though it is res judicata.

ECF No. 12, Exhibit 14 (Verbatim Report of Proceedings of April 15, 2009, *State v. Hunter,* Pierce County Superior Court Cause No. 07-1-01406-5, Volume 1 of 3, at 4-5).

REPORT AND RECOMMENDATION - 16

1  The Washington Court of Appeals determined that Mr. Hunter was not entitled to relief

2  regarding his claim that his trial counsel was ineffective for failing to challenge the legitimacy of

3  the search warrant to seize items related to identify theft:

4
5  The state and federal constitutions guarantee a defendant the right to
   effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 686, 104
   S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. McFarland,* 127 Wn.2d 322, 335, 899
6  P.2d 1251 (1995). We begin with a strong presumption that counsel provided
   adequate and effective representation. *McFarland,* 127 wn.2d at 335. To prevail
7  in an ineffective assistance of counsel claim, Hunter must show (1) that his trial
   counsel's performance was deficient and (2) that this deficiency prejudiced him.
8  *Strickland,* 466 U.S. at 687. Deficient performance is that which falls below an
   objective standard of reasonableness. *State v. Horton,* 116 Wn.App. 909, 912, 68
9  P.3d 1145 (2003). Prejudice occurs when trial counsel's performance was so
   inadequate that there is a reasonable probability that the trial result would have
10 differed, undermining our confidence in the outcome. *Strickland,* 466 U.S. at
   694. Legitimate trial strategy or tactics cannot serve as a basis for a claim that the
11 defendant received ineffective assistance of counsel. *State v. Mak,* 105 Wn.2d
   692, 731, 718 P.2d 407, *cert. denied,* 479 U.S. 995 (1986). If Hunter fails to
12 establish either element, we need not address the other element because an
   ineffective assistance of counsel claim fails without proof of both elements. *State*
13 *v. Hendrickson,* 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

14
15     Probable cause for a search warrant involves an issue of law, which we
   review de novo. *State v. Chamberlin,* 161 Wn.2d 30, 40, 162 P.3d 389 (2007). In
16 doing so, we give great deference to the issuing judge. *State v. Neth,* 165 Wn.2d
   177, 182, 196 P.3d 658 (2008). At the suppression hearing, the trial court acts in
17 an appellate-like capacity; its review, like ours, is limited to the four corners of
   the probable cause affidavit. *Neth,* 165 Wn.2d at 182.
18
19     A search warrant may issue only upon a determination of probable cause,
   based upon facts and circumstances sufficient to establish a reasonable inference
20 that criminal activity is occurring or that contraband exists at a certain location.
   *State v. Smith,* 93 Wn.2d 329, 352, 610 P.2d 869, *cert. denied,* 449 U.S. 873
21 (1980). Facts that, standing alone, would not support probable cause can do so
   when viewed together with other facts. *State v. Garcia,* 63 Wn. App. 868, 875,
22 824 P.2d 1220 (1992). The application for a search warrant must be judged in the
   light of common sense, with doubts resolved in favor of the warrant. *State v.*
23 *Partin,* 88 Wn.2d 899, 904, 567 P.2d 1136 (1977). Probable cause requires a
   nexus between (1) criminal activity and the item to be seized, and (2) the item to
24 be seized and the place to be searched. *State v. Thein,* 138 Wn.2d 133, 140, 977
   P.2d 582 (1999).
25

26

REPORT AND RECOMMENDATION - 17

Hunter argues that there was not probable cause to believe that criminal activity had occurred and that the affidavit failed to establish a nexus between the area to be searched, the items to be seized, and the alleged crimes. This is incorrect.

First, to the extent that Hunter assigns error to a decision in his prior criminal case, his arguments are not properly before us.  Hunter appealed his conviction in that case and we have already held that there was a nexus between the crimes alleged and the places searched.[3]  *State v. Hunter*, noted at 157 Wn. App. 1027, 2010 WL 3064972, (2010), *review denied*, 170 Wn.2d 1026 (2011).[4] Furthermore, to the extent that Hunter is arguing that the current trial court judge adopted Judge Steiner's findings, we review probable cause determinations de novo, so the trial court's rulings are not dispositive on appeal.  In addition, we can affirm on any grounds supported by the record.  *State v. Costich*, 152 Wn.2d 463, 477, 98 P.3d 795 (2004).

The affidavit provided probable cause to believe that Hunter had failed to register as a sex offender.  A person convicted of a sex offense in another state must register as a sex offender in Washington within three business days of establishing residence here.  RCW 9A.44.130(4)(a)(v).  The affidavit alleged that Hunter had been convicted of a sex offense in Oregon; Hunter had a phone number registered to him at a Pierce County residence; Hunter had been soliciting students at a Lakewood, Washington high school between the summer of 2006 and January 2007; and Hunter had not registered as a sex offender in Pierce County.  The affidavit sought to search for indicia of occupancy, residency, and/or ownership of Hunter's residence and vehicle, including utility bills, telephone bills, canceled envelopes, registration certificates, and/or keys. Evidence of residence is commonly located at one's house or in one's vehicle. These facts provide probable cause to believe that Hunter had committed a crime—failing to register as a sex offender, and that evidence of that crime would be found at his house.

*Thein* is not analogous.  In *Thein*, there was no incriminating evidence linking Thein's drug activity to the home that was searched:  "They only evidence [found during the search of another house that is] linked to [Thein's] residence is innocuous:  a box of nails and vehicle registration."  *Thein*, 138 Wn.2d at 150. Because these facts did not establish a nexus between evidence of illegal drug activity and Thein's residence, the court ordered the evidence seized therefrom suppressed.  *Thein*, 138 Wn.2d at 151.  Unlike *Thein*, as stated above, the affidavit provided sufficient facts that officers would find evidence of the crime of failing to register as a sex offender at Hunter's residence and in his car.

Hunter also argues that officers violated his Fourth Amendment rights by unlawfully seizing evidence of the identity theft charges because the warrant did not authorize police to seize those items.[5]  Officers, when executing a valid search

REPORT AND RECOMMENDATION - 18

warrant, may seize evidence they discover of other crimes if the "plain view" requirements are met. *State v. Reep*, 161 Wn.2d 808, 816, 167 P.3d 1156 (2007). The requirements for plain view are "(1) a prior justification for intrusion, (2) inadvertent discovery of incriminating evidence, and (3) immediate knowledge by the officer that he had evidence before him." *Reep*, 161 Wn.2d at 816. Inadvertent discovery is no longer a requirement to establish the plain view exception under the Fourth Amendment. *Reep*, 161 Wn.2d at 816.

Here, the officers had a prior justification for the intrusion—the valid search warrant. Hunter does not argue that the police exceeded the warrant's scope. An officer would likely know immediately that the documents seized in this case were evidence. Officers found not just one or two pieces of identification and financial information, but scores of such information. The evidence was validly seized under the plain view exception.

Because probable cause supported the search warrant and because there was a sufficient nexus between the alleged criminal activity and the area to be searched, the trial court would have denied Hunter's motion to suppress. Counsel's performance was therefore not deficient and Hunter cannot demonstrate prejudice. Hunter did not receive ineffective assistance of counsel.

[3] [Court's footnote omitted.]
[4] [Court's footnote omitted.]
[5] Hunter's arguments that the police exceeded the scope of the search warrant by looking for evidence other than photos, photo studios, or computers, ignores the fact that the search warrant permitted law enforcement to also look for mail, bills, registration certificates, and keys. [Footnote by the court.]

ECF No. 12, Exhibit 5, at 5-8.

Mr. Hunter's trial counsel brought motions to suppress the search warrant affidavit in both cases related to the search. He did so first in the case in which Mr. Hunter was charged for sex offense crimes and then, in the case in which Mr. Hunter was charged for identity theft. After the trial judge in the sex offense crime case ruled that the warrant was valid, Mr. Hunter's counsel conceded the motion to suppress in the second case after researching the issue and determining that the law of *res judicata* applied "because it was the same warrant, the same parties, the same transaction, the same issues." Nevertheless, the Washington Court of Appeals

REPORT AND RECOMMENDATION - 19

reviewed the probable cause determination de novo before concluding that probable cause

supported the search warrant and that because the trial court would have denied the motion to

suppress, counsel's performance was not deficient and Mr. Hunter could not demonstrate

prejudice.  In making the latter determination, the Washington Court of Appeals applied the

proper *Strickland* standard in evaluating Mr. Hunter's claim of ineffective assistance of counsel.

Its conclusion that Mr. Hunter's counsel did not render ineffective assistance of counsel was not

contrary to or an objectively unreasonable application of clearly established law, as determined

by the U.S. Supreme Court nor was it an objectively unreasonable determination of the facts in

light of the evidence presented during his state court proceeding.  Thus, Mr. Hunter is not

entitled to habeas relief as to Claim 3 and Claim 3 should be denied.

**D.**      **Claim 4 – Validity of Search Warrant – Fourth Amendment**

In Claim 4, Mr. Hunter contends that his Fourth Amendment right to be free of

unreasonable searches and seizures was violated when the search warrant was held valid even

though the affidavit for the warrant failed to establish probable cause for the search of his car or

residence.  ECF No. 1, p. 10.   Respondent moves to dismiss this claim pursuant to *Stone v.*

*Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), which precludes a federal court

from enforcing the exclusionary rule through writs of habeas corpus.

Fourth Amendment claims are not cognizable on collateral review so long as the

defendant has a "full and fair" opportunity to litigate the claim in state court.  *See Stone v.*

*Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).  This is so because primary

justification for the exclusionary rule is to deter Fourth Amendment violations by law

enforcement personnel rather than "to redress the injury to the privacy of the victim of the search

or seizure, for any '[r]eparation comes too late.'"  *Id.* at 486 (*quoting Linkletter v. Walker*, 381

REPORT AND RECOMMENDATION - 20

U.S. 618, 637, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)).  The called-for inquiry is whether the

petitioner had the opportunity to litigate his claim, not whether he did or even whether the claim

was correctly decided.  *Ortiz–Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir.1996) (citing

*Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir.1990)); *Locks v. Sumner*, 703 F.2d 403, 408 (9th

Cir.1983).  The existence of a state procedure allowing for the opportunity for full and fair

litigation of Fourth Amendment claims alone bars federal habeas corpus consideration of those

claims.  *See Gordon*, 895 F.2d at 613–14 (holding that the determinative factor for the court was

that California law allowed for motion to suppress evidence, not whether defendant litigated

upon such grounds).  A petitioner must demonstrate that the state courts have not afforded him a

full and fair opportunity to litigate his Fourth Amendment claims.  *Woolery v. Arave*, 8 F.3d

1325, 1328 (9th Cir.1993).  The prudential bar is so strong that, absent petitioner making such a

showing, a federal court must *sua sponte* apply *Stone v. Powell* to bar consideration of a Fourth

Amendment claim even when the state fails to raise the issue.  *Woolery*, 8 F.3d at 1326.

The Washington Criminal Rules for Superior Courts provide for a full and fair

opportunity to litigate Fourth Amendment claims.  See CrR 3.6.  The record reflects that Mr.

Hunter had an opportunity to litigate his Fourth Amendment claim in the Pierce County Superior

Court.  As noted above, Mr. Hunter filed a motion to suppress evidence seized pursuant to the

search warrant signed by the trial court on February 27, 2007 in Pierce County Superior Court

Cause No. 07-1-00612-7 and the trial judge (Judge Steiner) denied the motion to suppress.  ECF

No. 12, Exhibit 10.  Mr. Hunter's counsel filed the same motion to suppress the same search

warrant in Pierce County Superior Court Cause No. 07-1-01406-5, the case in which the

judgment being challenged herein was issued.  *Id.*, Exhibit 11 (*State v. Hunter*, Pierce County

Superior Court Cause No. 07-1-01406-5).  At a hearing, defense counsel conceded the motion

REPORT AND RECOMMENDATION - 21

because the issue had already been decided by Judge Steiner based on *res judicata* because "it was the same warrant, the same parties, the same transaction, the same issue."  However, counsel filed the motion to preserve the issue.  ECF No. 12, Exhibit 14 (Verbatim Report of Proceedings of April 15, 2009, *State v. Hunter*, Pierce County Superior Court Cause No. 07-1-01406-5, Volume 1 of 3, at 4-5).

Based on the above, Mr. Hunter clearly had an opportunity to litigate his Fourth Amendment claim and therefore, Claim 4 is barred from receiving federal habeas relief based on *Powell*.  Accordingly, Claim 4 should be denied.

**CERTIFICATE OF APPEALABILITY**

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge.  A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Under this standard, this Court concludes that Mr. Hunter is not entitled to a certificate of appealability as he has not shown that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

REPORT AND RECOMMENDATION - 22

**CONCLUSION**

The Court recommends that Claims 1, 2, 3, and 4 of Mr. Hunter's federal habeas petition be **denied on the merits and dismissed with prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).   Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **May 10, 2013**, as noted in the caption.

**DATED** this   23rd   day of April, 2013.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 23